# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| TERI L. MZOZOYANA, | Case No. 3:19-cv-91 |
| Plaintiff, | |
| v. | District Judge Walter H. Rice |
| ROBERT L. WILKE, SECRETARY DEPARTMENT OF VETERANS AFFAIRS, | Magistrate Judge Michael J. Newman |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM CONTRA DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's motion for summary judgment should be denied and this matter proceed to trial. Substantial factual disputes exist and Plaintiff's demotion was implemented pursuant to an inapplicable United States statute, resulting in the demotion not being legally effective.

Respectfully submitted,

DUWEL LAW

*/s/ David M. Duwel*
DAVID M. DUWEL (0029583)
130 West Second Street, Suite 2101
Dayton, Ohio 45402
(937) 297-1154 Telephone
(937) 297-1152 Facsimile

Attorney for Plaintiff

**MEMORANDUM CONTRA**

**A.    Background Facts:**    Plaintiff Teri Mzozoyana is an African American female born on January 27, 1957. She has been continuously employed at the Columbus VA Medical Center since 1992. Prior to the demotion at issue herein, Plaintiff was serving Defendant as its Human Resources Officer, since 2000. She reported directly to the Medical's Center's Associate Director. Also prior to her demotion in November 2017 there is no dispute that Ms. Mzozoyana was highly regarded as an employee at the facility with no record of prior discipline and excellent performance appraisals. At the time of her demotion, Plaintiff, was 60 years of age. Plaintiff has been married to Mbulelo Mzozoyana since June 15, 1986. Plaintiff's Deposition, Page ID#218, 223. (Plaintiff's deposition is docket number 25 on the Court's docket but will be referred to herein as "Plaintiff's Deposition.")

This case is predicated on the Columbus VA's decision to hire Plaintiff's husband, Mbulelo Mzozoyana, as a new employee, in June 2017. There is a very significant dispute in the role that Plaintiff played in the selection process for her husband's position. Plaintiff believes her role was insignificant and tangent while Defendant's belief is that Plaintiff's role was active and direct. Both parties are anchored deeply in their perceptions and as such the actual facts are critical to this matter's determination. Further the existence of the factual disputes preclude the awarding of a summary judgment.

Two other matters are also at play herein. Plaintiff believes her demotion should be set aside and receive back pay because she was treated very differently than younger Caucasian employees who were also alleged to have engaged in inappropriate behavior during the same time period. Defendant argues in part that these employees are not "comparable" because their misconduct while serious did not involve nepotism and appears to rely on <u>Mitchell v. Toldeo</u>

2

Hosp., 964 F.2d 577 (6th Cir. 1992). Plaintiff, as further explained below, believes that Defendant's reliance on Mitchell is misplaced and that this Court should consider the very inappropriate and "comparably serious" behavior of Caucasian and younger employees, James Dusenberry, Catherine Gnau, Cynthia Gress and James Kuck, who like Plaintiff, were Service Chiefs at the Columbus VA Medical Center. Further, both the Director of the Chillicothe VA Medical Center Wendy Hepker (Caucasian age 50) and the Associate Director Jamie Kuhne (Caucasian in her thirties) had also engaged in nepotism involving Ms. Hepker's husband and Ms. Kuhne's brother in law. Infra.

Finally, a very significant factual and legal issue exists in respect to the statutory authority Defendant used to demote Plaintiff, which was 38 U.S.C. §714. The Federal Circuit ruled in 2020, that this statute could not be applied retroactively to discipline federal employees. Sayers v. Department of Veterans Affairs, 954 F.3d 1370, 1380 (Fed. Cir. 2020). There is no dispute whatsoever that November 3, 2017 was the date that Columbus VA Medical Center Director Wendy Hepker made the decision to demote Plaintiff allegedly for behavior occurring prior to the hire of Plaintiff's husband on June 11, 2017. 38 U.S.C. §714 did not become effective until June 23, 2017, twelve days after Mr. Mzozoyana's hire. It is also not disputed that every alleged negative Plaintiff action involved in this case occurred before the effective date of 38 U.S.C. §714. This statute was implemented during the Trump presidency implemented to streamline the discipline and removal process for VA employees, by shortening deadlines, lessening the burden of proof to a substantial evidence standard and restricting a third party reviewer of the agency's action to examine only the veracity of the underlying allegations and not the appropriateness of any adverse employment action. As such Plaintiff was demoted, under a statute designed to make it easier for federal agencies to take adverse actions against

3

employees, and a statute that did not exist at the time the Columbus VA was investigating Ms. Mzozoyana's actions. The fact that the Sayers decision did not surface for three years later should not deprive Plaintiff's ability to assert the unlawfulness of the Agency's actions, even if as Defendant argues in its motion, it had an honest belief "in its actions."The Sayers Court did not allow the Department of Veterans Affairs to rely on such a belief.

**B.    Plaintiff did not violate nepotism rules in respect to the hiring of her husband at the Columbus VA:**    As noted by Defendant in its motion and memorandum at 4, in early 2016 the Columbus VA sought to create a new Trainer position for its Environmental Management Service (EMS) department. At this time Plaintiff was serving Defendant as its Human Resources Officer. Plaintiff would not transition to an interim position, Associate Director of the Columbus VA until November 13, 2016. She would serve in this interim role for only 3 ½ months until March 5, 2017 when a new Associate Director Jamie Kuhne, was selected. Plaintiff's Deposition, Page ID#232. Had Plaintiff remained in her Associate Director position, her husband would have been in her chain of command. However, when her husband was hired on June 11, 2017, she had returned (as of March 5, 2017) to her Human Resources Position.

Back to the creation of the new trainer position in early 2016. The first step in that process was for EMS to create a job description for the new position which was then submitted to Human Resources for classification. Plaintiff was responsible for approving the final classification for all jobs at the Columbus facility. Plaintiff initially contacted the Human Resources Department at the Dayton VA and asked if they could classify the new job as Dayton had recently created a Trainer position. Dayton agreed and sent the classification to Columbus as a GS-9 wage level. Plaintiff then sent the classification to Wendy Hepker, the Columbus VA Medical Director for final approval. Plaintiff's Deposition, Page ID#238-240.

4

Then, a significant event occurred, not mentioned in Defendant's motion. The Columbus VA Medical Director Wendy Hepker (and not Plaintiff) was not happy with the initial classification as a GS-9 because the associated wage was in her opinion too large and she directed Plaintiff to reclassify the Trainer position to a lower wage GS-7 position. To accomplish this Plaintiff sent the job description back to EMS so it could reduce certain job duties, commensurate with a GS-7 wage grade position. Once this occurred Plaintiff reclassified the job as a GS-7 and this time Hepker signed off on July 19, 2016. Plaintiff elected not to return the job description to Dayton for classification to save time as EMS was eager to start interviewing candidates. Plaintiff's Deposition Page ID#241-243. Reclassifying the Trainer position to a lower wage job, had the effect of removing the exclusivity of preference eligible veterans candidates which was present with the original GS-9 classification, Plaintiff's husband was not a veteran. Plaintiff's Deposition Page ID#248-249. There is absolutely no evidence that Plaintiff took this action to benefit her husband who did not apply for the position until December 19, 2016, five months later and did not inform Plaintiff he had applied until January 3, 2017. The change from a Gs-9 to a GS-7 position was mandated by Director Hepker. Plaintiff's Deposition Page ID#251. Defendant's suggestion that Plaintiff reclassified this position to benefit her husband strains credulity, Plaintiff testified at her deposition that she had no knowledge of her husband's interest in the job and didn't discuss it with him until after he applied for same. Plaintiff Deposition Page ID#253. After Plaintiff's husband informed her he had applied for the job, Plaintiff told him she couldn't help him in any manner to obtain the job. She didn't help him prepare for the interviews and didn't even know who was on the interview panel. Plaintiff's Deposition Page ID#254, 257.

Defendant further mentions that on November 13, 2016 Plaintiff was detailed to an interim position, Associate Director which is admitted by Plaintiff. It is also not disputed that in her new temporary position, Plaintiff supervised EMS Chief Novella Fulmore and other individuals who would eventually select the new EMS trainer for the Columbus VA. This initial selection was made in May, 2017 and Mr. Mzozoyana began his employment with the Columbus VA Medical Center on June 11, 2017. Plaintiff never spoke to Ms. Fulmore (or anyone) about her husband's application for the training position. Plaintiff's Deposition Page ID#252. By the time the selection was made, Plaintiff had returned to Human Resources so there was no favor Ms. Fulmore could have earned by hiring Plaintiff's husband.

So for a process that began early in 2016, Plaintiff's first knowledge of any involvement on her husband's part came in January 2017.

Plaintiff was surprised to learn that her husband had been selected for the Trainer position. Shortly after she learned of this, she reached out to VA Regional Counsel, Arlene Shively on May 11, 2017 because Plaintiff believed she should bring this to the legal department's attention. Plaintiff's Deposition Page ID#261-262. If Plaintiff was trying to ensure that her husband's selection was not changed, she would have remained silent. In her email communication with Ms. Shively, Plaintiff honestly reported that she had no involvement in any part of the process. Defendant asserts that Plaintiff should have advised Ms. Shively that she was involved in the classification process, but Human Resources Officers are involved in all job classifications and Ms. Shively should have known that. Plaintiff's only real involvement in the classification process was to revise the initial classification because Ms. Hepker wanted a position with reduced pay. Plaintiff was also not involved in the interview process nor did she even discuss this with her husband. Plaintiff Deposition, Page ID#254, 257. Possibly Plaintiff

6

should have advised Ms. Shively that she had been temporarily detailed to the Associate Director position and the selecting official was someone who had reported to her in the past. However, at that time, on May 11, 2017 Plaintiff was back at her previous Human Resources position and had been since March 5, 2017. Defendant seems to believe without any evidence to support the belief that since Plaintiff and Mbuelo were married that they must have discussed the job as early as June 2016 and that Plaintiff then orchestrated a plan to ensure that her husband would receive this job one year later. This belief is not supported by the evidence or common sense. Also see Plaintiff's written response to Defendant's notice of proposed removal, attached as Plaintiff's Exhibit A which was a document (USAO 001578-001580) Defendant produced during discovery which is an extremely credible explanation of Plaintiff's action.

After email communications with Plaintiff, Ms. Shively signed off on Plaintiff's husband's hire but also suggested that the Columbus VA run the selection process past the Cleveland VA Human Resources Department who also approved the hire. Attached are Plaintiff's Exhibit B (USAO 001743-001746) and Exhibit C (USAO 001889-001894) which are documents Defendant produced during discovery.

**C.** **Mitchell v. Toledo Hospital is not controlling in this matter.** Defendant cannot dispute that at the Columbus VA Medical Center, every significant personnel/disciplinary action is decided by the Medical Center's Director, which at all relevant times in this case was Wendy Hepker. All of the decisions in this case as to other comparable employees identified by Plaintiff were made by Wendy Hepker, the ultimate supervisor at the Columbus VA Medical Center. As such the actual day to day supervisor of these employees is not critical. Further all of the identified comparable employees held significant management positions as did Plaintiff. The Sixth Circuit in DeBra v. JP Morgan Chase and Co., 749 Fed. Appx. 331, 338 (1992)

modified/clarified Mitchell by stating that "whether it is relevant in a particular case that employees deal with the same supervisor depends on the facts presented". Also, *see* Bobo v. United Parcel Serv., Inc., 665. F3d 741, 751 (6th Cir. 2012). The same supervisor factor is "made on a case by case basis and does not depend entirely on whether the two shared the same immediate supervisor." Barry v. Noble Metal Processing, Inc., 276 F. App'x 477, 481 (6th Cir. 2008). Rather, "in many instances the term supervisor should be construed broadly to include cases where both employees' situations were handled by the same ultimate supervisor." Barry, supra at 481. In this case the ultimate supervisor was Wendy Hepker.

  While it is true that none of the comparable employees were charged with violations of the nepotism policy, this is not the bright line analysis as urged by Defendant. All of these individuals engaged in serious misconduct in the workplace, comparable to the misconduct alleged against Plaintiff such that their misconduct was of "comparable seriousness if not greater." *See* McDonald v. Santa Fe Transit, Co., 427 U.S. 273, 49 Led 2d 493, 96 S. Ct. 2574 (1973). Ercegovich v. Goodyear Tire and Rubkin Co., 154 F. 3d 344, 352 (6th Cir. 1998) The misconduct of the comparables in this case does not have to be the same exact behavior alleged to have been engaged in by Plaintiff. Rather, the conduct "must be similar in kind and severity." Barry, supra at 483.

  Interestingly, Defendant, asserts also that the above four employees cannot be considered comparables because Plaintiff was disciplined pursuant to 38 U.S.C. §714, and the comparables were not. However, this argument is of no significance since as set forth above, Defendant incorrectly, and unlawfully retroactively applied Section 714 against Plaintiff, which action was subsequently invalidated by the Fed. Cir. Decision in Sayers v. Department of Veterans Affairs, supra. Further such an argument ignores the reality that the comparables were not disciplined

8

and/or demoted and that the two comparables who were reassigned did not lose any pay as did Plaintiff.

1.      James Dusenbery, a white married male in his mid to late forties was the Chief of Pharmacy Services at the Columbus VA, a significant management position. Defendant does not dispute that Mr. Dusenberry had an affair in 2016-2017 with another Columbus VA married employee. Such conduct violated Defendant's internal rules and policies and impacted the workforce. Dusenberry was not disciplined but permitted by Director Wendy Hepker to transfer to another VA without a pay cut. He is now the Associate Director at the Battlecreek Michigan VA. Plaintiff's Deposition Page ID#389-394, 419.

2.      Catherine Gnau, a white female in her forties was Chief of Logistics Service at the Columbus VA, an important management position. Ms. Gnau engaged in very inappropriate behavior at the Columbus VA, and allowed a very highly sexualized environment to exist, including men and women engaging in wrestling matches. Defendant initiated an Administrative Investigation Board in January 2017 in respect to Ms. Gnau's area of responsibility. Work was not being timely performed because employees were "goofing off" and not doing their job. The Administrative Investigation Board found the existence of a hostile work environment, with foul and insulting language, sarcasm and other inappropriate behavior was common place in Gnau's area and that management (Gnau)did not effectively deal with the hostile work environment. Plaintiff's Exhibit D is a document produced by Defendant (USAO-000303-000307) detailing the findings. During the investigation Defendant conducted over 20 discovery depositions of Columbus VA employees. Plaintiff wanted to initiate disciplinary action against Gnau but Hepker disagreed. Instead Gnau was permitted by Hepker to transfer to the Chillicothe VA without a pay reduction. Plaintiff's Deposition Page ID#380-387, 418.

3.     Cynthia Gress, a white female, in her forties was the Chief of Fiscal Services at the Columbus VA, an important management position. She was initially proposed for removal for service violations of Policy Memorandum 05-02, Employee Responsibility and Conduct: *See* Government Exhibit 3, USAQ-000924.

Ms. Gress was charged with creating and perpetuating an environment detrimental to the Fiscal Service, which included engaging in yelling confrontations; demeaning and berating staff in public and private interactions; restricting the staff from using the restroom and not providing customer service; and a failure to make positive changes in the work environment after a prior direct order to do so, supra. Director Hepker mandated a Fact Finding be conducted in Ms. Gress' area, Fiscal Service. Attached Plaintiff's Exhibit E, is a discovery document produced by Defendant (Defendant failed to bate stamp this document) and is a 14 page report detailing the significant problems found to exist in that area.

Notwithstanding the significant problems found to exist in Fiscal Service and notwithstanding prior similar warnings to Ms. Gress, Director Hepker elected on July 17, 2017 to allow Ms. Gress to transfer to another Financial Manager position at the Columbus VA same wage grade without any loss of pay.

4.     Greg Kuck a white male in his forties was the Chief of Pharmacy at the Columbus VA, an important management position. His misconduct was similar to that of Ms. Gress and occurred in mid to late 2017. There were a large number of complaints from his staff and pharmacy service with employees threatening to leave and concerns about the condition of the pharmacy. Defendant moved Kuck out of his position and gave him a new position working in Wendy Hepker's office. Plaintiff's Deposition, Page ID#187-190. Kuck received no discipline nor a reduction in pay. Plaintiff's Depositions Page ID#192.

None of the Caucasian comparables were terminated or demoted and those who were reassigned did not experience a reduction in pay as did Plaintiff and all were in their thirties or forties and as such substantially younger than Plaintiff. During the time that Wendy Hepker was Director of the Columbus VA, and the decision maker in all four cases, Plaintiff was the only management employee demoted (or terminated). Plaintiff's Deposition, Page ID#431. Ms. Hepker tolerated inappropriate sexual relationships in the workplace, an extreme sexually hostile workplace, a workplace predicated on intimidation of staff and noncooperation with other staff and one where employees were threatening to leave due to hostility and mistreatment, which environments were all created by younger Caucasian employees. Not one of these managers suffered any financial damage. All of the comparables' misconduct occurred in the 2016-2017 time period, the same period applicable to the allegations against Plaintiff and Hepker was the ultimate decision maker in these matters. However, when Plaintiff was subject to the deminius allegations herein, she was demoted, and her annual salary was substantially reduced. Certainly, factual issues exist in respect to how Director Hepker treated the comparables and Plaintiff.

The two individuals who Plaintiff alleges discriminated against her, due to her race and age, were also involved in nepotism at the Columbus VA. Director Wendy Hepker, a Caucasian when she was the Director of the Chillicothe VA Medical Center reached out to the then Columbus VA Director looking for employment opportunities at the Columbus VA for her husband. The Columbus VA Director contacted Plaintiff who was then the Human Resources Officer and told her she didn't feel comfortable with Hepker's request. Hepker's husband is currently employed as an employee of the Dayton VA Medical Center. Plaintiff's Deposition Page ID#411.

11

Shortly after Associate Director, Jamie Kuhne, Caucasian and in her thirties recommended Plaintiff's removal, she was involved in the hiring of her brother in law at the Columbus VA. Originally the brother in law was assigned to a position in Kuhne's chain of command. However, when Ms. Kuhne was reminded, this was exactly what she has just accused Plaintiff of, the brother in law was transferred to a position outside Kuhn's chain of command. Plaintiff's Deposition Page ID#414-415. Both Hepker and Kuhn no longer work for the Columbus VA. Plaintiff's Deposition Page ID#417-418.

**D.** **Summary Judgment Standard:** Summary Judgment is not appropriate when genuine issues of material facts exist as to any one of the essential elements of a Plaintiff's cause of action. Celotex Corp. v. Catrett, 477 U.S.317 (1986). In this case material facts exist in respect to Plaintiff's age and race clams, in particular in respect to how the Columbus VA treated other Service Chiefs at its Medical Center during 2016-2017. It is hard to imagine the serious misconduct occurring in all areas of the facility, Logistics, Fiscal Service, Pharmacy, etc. during the exact same time period of Plaintiff's alleged misconduct and suggests that Hepker was not an effective Director. In all these cases and it is not disputed by Defendant that the Service Chiefs were Caucasian and substantially younger than Plaintiff. None of the other Service Chief were removed, demoted or lost any pay. Plaintiff, a 60 year of African American female was the only Service Chiefs who suffered a financial loss as she was demoted and lost approximately $20,000 in salary. This evidence is certainly significant probative evidence, and the evidence comes from Defendant's own business records. This evidence cannot be construed as a "bare denial" and/or "scintilla of evidence." A jury could reasonably determine that Ms. Mzozoyana was treated differently than substantially younger Caucasian Service Chiefs. Further there is no evidence in

the record that establishes that Defendant unlawfully applied 38 U.S.C. §714 to any employee other than Plaintiff.

## CONCLUSION

Plaintiff Teri Mzozoyana is an African American female who was 60 years old at the time of her demotion in 2017. Prior to that time she had worked at the Columbus VA Medical Center since 1992, and since 2000 as the Service Chief for the Human Resources office. Prior to November 2017 Plaintiff had an unblemished record of exceptional job performance and zero disciplinary action. Her honesty and integrity was never challenged.

Then in early 2016, one of the departments at the Columbus VA, Environmental Management Services decided it wanted to create a new Trainer position so as to improve its operations. In order to accomplish its objective, it drafted a new job description and in accordance with the Medical Center's polices sent the job description to Human Resources so that job could be properly classified which primarily involved the salary or wage associated with the position. To a smaller extent, job classification also involved determining who was eligible to apply for the job, veteran v. non veteran and requisite prior education or job experience.

Realizing that EMS was in a hurry to establish the job so it could begin interviewing candidates. Plaintiff forwarded the EMS drafted job description to the Dayton VA Human Resources for classification because she knew that facility had recently added a Trainer position to its EMS department. Although the process took longer than expected Dayton eventually returned a classification as a GS-9 position to Columbus. Importantly this classification would have the effect of making Plaintiff's husband ineligible for the position because he was not a

13

veteran. At that time Plaintiff had no discussions with her husband about this position or any knowledge that he would be interested in such a job.

Upon receipt of the Dayton VA classification Plaintiff approved it and forwarded to Wendy Hepker the Columbus VA Director for her final approval. However Ms. Hepker refused to sign off on the Dayton classification because the salary was too high and she wanted the position approved as a GS-7 with lower pay. In order for this to happen EMS had to rewrite the job description and reduce some major duties so that a lower wage could be approved. EMS changed the job duties and forwarded the new job description to Plaintiff for approval. Instead of resending it to the Dayton VA, Plaintiff elected to approve the classification as a GS-7 position, because it was now July 2016 and EMS needed to move quickly. The effect of the reclassification from a GS-9 to a GS-7 and a lower rate of pay opened up the possibility that Plaintiff's husband could be eligible for the position, because he had a disability. Again this was in July and Plaintiff had no idea that her husband would have an interest in the job or five months later would apply for it.

Defendant fails to understand that Plaintiff's role in the creation and classification of the job was minimal. EMS came up with the need for the job and Ms. Hepker vetoed the initial classification because the associated wage was too large. Had Hepker signed off on the first classification. Ms. Mzozoyana would not have been eligible to even apply. It is difficult to understand Defendant's criticism of Plaintiff's effort and its criticism is predicated on pure speculation that Plaintiff and her husband were in a conspiracy from February 2016 through June 2017 to secure a lower paying job for him. There is zero evidence this occurred and common sense suggests that this didn't occur. Plaintiff testified at her deposition that she and her husband did not discuss each other's work.

14

What we do know is that at the same time it was investigating Plaintiff (based on an anonymous tip) there was a multitude of serious misconduct ongoing at the facility. Major investigations were ongoing of the Logistics area managed by Ms. Gnau and Fiscal Services managed by Ms. Gnau, Defendant's own business records establish the severity of such misconduct. These individuals are substantially younger Caucasians and in both cases Ms. Hepker allowed transfers without a loss in pay. However, in Plaintiff's case Hepker demoted Plaintiff and significantly reduced her pay notwithstanding Regional Counsel Arlene Shively and the Cleveland Human Resources Department finding no fault on Plaintiff's part.

Defendant then proceeded to demote Plaintiff relying on a federal statute not then in existence and there is no evidence that said statute was utilized in respect to Caucasian and/or substantially younger employees.

Teri Mzozoyana is a credible trustworthy and excellent employee. There is no justification for what Associate Director Jamie Kuhne and Director Wendy Hepker did to her, both of which had their own issues with nepotism.

Defendant's motion for summary judgment must be overruled.

Respectfully submitted,

DUWEL LAW

*/s/ David M. Duwel*
DAVID M. DUWEL (0029583)
2101 First National Plaza
Dayton, Ohio 45402
PH:   (937) 297-1154
FAX:  (937) 297-1152
david@duwellaw.com

Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's CM/ECF.

*/s/ David M. Duwel*
Attorney at Law